RECEIVED **IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
2017 MAY -5 P 1: 11 **NORTHERN DIVISION**

KASSARDRA HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.
Plaintiff,

v.

ALABAMA LAW
ENFORCEMENT AGENCY and
CORPORAL GARY SCOTT
STRATTON, in his individual capacity

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.:

2:17-CV-298-

**JURY DEMAND**

## COMPLAINT

### I.    INTRODUCTION

1.    This is an action by the plaintiff for equitable and legal relief to redress unlawful discrimination based on sex, including sexual harassment, and retaliation, including retaliatory harassment, by the defendants. The suit is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991, (hereinafter "Title VII"), which provides for relief against discrimination in employment, including illegal harassment. Through supplemental jurisdiction, this Court's jurisdiction extends over the related Alabama state law claims of invasion of privacy and outrage because all such claims arise from a "common nucleus of operative fact." The plaintiff seeks a declaratory judgment, injunctive relief, and other equitable remedies, including backpay and reinstatement, as well as compensatory and punitive damages, costs, attorneys' fees and expenses.

**II.    JURISDICTION & VENUE**

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(4), 2201,
      2202, and 42 U.S.C. §2000e-5(f)(3).

3.    The unlawful employment practices alleged were committed by the defendants within
      Tallapoosa County, Alabama. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)
      and 42 U.S.C. §2000e-5(g).

4.    The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable
      by jury.

**III.   ADMINISTRATIVE PREREQUISITES**

5.    The plaintiff has fulfilled all conditions precedent to the institution of this action under Title
      VII. The plaintiff filed a charge of discrimination with the Equal Employment Opportunity
      Commission ("EEOC") within 180 days of the occurrence of the last discriminatory act. The
      plaintiff timely filed her lawsuit within 90 days of the receipt of her Notice of Right-To-Sue
      from the EEOC.

6.    The plaintiff timely filed a charge of discrimination under Title VII with the Equal
      Employment Opportunity Commission ("EEOC") (Charge Number 420-2016-02597)
      alleging, *inter alia*, an illegal hostile work environment and/or harassment resulting in her
      termination based upon sex and retaliation for resisting and opposing this discrimination as
      well as complaints about the same. Attachment 1. The EEOC issued the plaintiff Notice of
      Right to Sue dated February 4, 2017, which the plaintiff received several days later, and has
      timely filed this Complaint within 90 days of receipt of that notice. Attachment 2.

## IV.   PARTIES

7.   The plaintiff Katie Pouncey ("Pouncey" or "plaintiff") is a female citizen of the United States, is over the age of nineteen (19) and was a resident of the State of Alabama during the relevant time period. The plaintiff was employed by defendant ALEA.

8.   The defendant, the State of Alabama Law Enforcement Agency (hereinafter referred to as "ALEA" or "defendant"), is an employer subject to suit under Title VII of the Act of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* The plaintiff was hired by the State of Alabama Department of Public Safety ("DPS") during July 2000. DPS was one of the law enforcement agencies combined by an Act of the Alabama legislature to create ALEA on January 1, 2015. DPS and ALEA each employed at least fifteen (15) persons.   ALEA is located in Montgomery, Alabama and has an office in Tallapoosa County, Alabama.   DPS and ALEA were the plaintiff's employer at all times relevant to this action within the meaning of Title VII of the Civil Rights Act of 1964.

9.   The defendant Corporal Gary Scott Stratton (hereinafter "Stratton" or "defendant") is an individual subject to suit under Alabama law. This Court's jurisdiction extends over the related state law claims of invasion of privacy and outrage because all such claims arise from a "common nucleus of operative fact."

## IV.   STATEMENT OF FACTS

10.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

11.   The plaintiff was hired by the State of Alabama Department of Public Safety ("DPS") during July 2000. DPS was one of the agencies which was combined by an Act of the Alabama

legislature to create the Alabama Law Enforcement Agency ("ALEA") on January 1, 2015.

12.     Throughout her employment with DPS and ALEA, the plaintiff was an excellent employee
        and received positive performance reviews at all times prior to her assignment to work for
        Corporal Stratton and the retaliation which followed that assignment. During her
        employment, the plaintiff had been approved for intermittent Family & Medical Leave Act
        ("FMLA") leave due to migraine headaches. The plaintiff submitted all the required
        paperwork and was approved for intermittent FMLA leave. The plaintiff exercised her
        FMLA leave as allowed by policy and had never exceeded her allowed leave. The plaintiff
        had never encountered any problems in using her FMLA leave prior to her assignment to
        work for Corporal Stratton and the retaliation which followed that assignment.

13.     On November 3, 2014, the plaintiff transferred into a position where defendant Stratton was
        her direct supervisor. The plaintiff transferred to the position because she had developed
        experience with CDL licensing and wanted to develop more experience with inspections and
        enforcement related to this area of law enforcement.

14.     The plaintiff was married to her husband in 1999 and has always worn a wedding ring in
        public and to work.

15.     Almost immediately after defendant Stratton became her supervisor, he began making
        personal comments which were inappropriate for a supervisor. When he was in the office,
        Stratton would make comments about the plaintiff's personal appearance, and comment
        about her clothes, her hair, her fingernails, and her perfume. The plaintiff eventually stopped
        wearing perfume because of Stratton's comments.

16.    Stratton made frequent statements about his marriage, which was apparently very troubled. Stratton would complain about his wife and how she was a homebody who did not like to go out or to travel. Stratton would ask the plaintiff if she liked to travel. At first, the plaintiff was confused by these comments and questions and tried to deflect any interest by giving vague or evasive answers. Regardless of the plaintiff's answers, Stratton would comment that the two of them would have fun going on a trip together. The plaintiff always tried to convey that she was happily married and not interested in going out with him or on a trip with him.

17.    About two weeks after the plaintiff started to work for Stratton, he invited and insisted that the plaintiff come to lunch with him and his wife. Stratton said his wife wanted to meet her. The tone at the lunch was strange and awkward. Stratton's wife sat beside the plaintiff rather than her husband and made repeatedly made rude and cutting remarks about Stratton to the plaintiff. The plaintiff was surprised and confused by this situation. Later, Corporal Kevin Ingells (male) told the plaintiff that Stratton's wife had probably wanted to meet her because Stratton had cheated on her before and that his wife wanted to "check her out." The plaintiff responded that she was married and was not interested in Stratton at all even if she were not married.

18.    Stratton was frequently out of the office to conduct inspections. When Stratton was out of the office, he made it a habit to call the plaintiff to talk. Stratton would mention some work-related topic first, but would always steer the conversation toward some personal topic, such as his marriage or asking personal questions about what the plaintiff was doing in her personal life. These conversations were not appropriate for a supervisor, especially a new supervisor, to ask a subordinate employee.

19. Stratton frequently told the plaintiff that his family owned a lot of land in Kentucky and that one day he would inherit a lot of money. Stratton would often show the plaintiff his Facebook page and his personal photographs on his work computer. Stratton invited the plaintiff to go have lunch at least five (5) times during November and December 2014, which was a large percentage of the days he was physically present in the office.

20. On December 21, 2014, Stratton gave the plaintiff a Fossil watch that cost $140 along with a Christmas Card with a familiar message. The card stated "Merry Christmas! Wishing you ALL the Best. Because that's what you deserve! S-." The plaintiff had expected to get the watch from her mother, who could not find it, and gave her another gift instead. The plaintiff was surprised by the gift because there was no reason for Stratton to know or remember that the plaintiff wanted the watch and there was no reason for Stratton to give her a relatively expensive present after she had only known him six (6) weeks. The plaintiff found the entire situation, including the message in the card, disturbing.

21. The plaintiff told Stratton the card he gave her was inappropriate and that he should not be giving her expensive gifts.

22. During January 2015, the plaintiff complained to Captain Susanna Capps (female) about Corporal Stratton. Captain Capps (female) supervised Corporal Stratton. The plaintiff told Captain Capps that Corporal Stratton had been acting strangely toward her by talking about his personal life and asking her a lot of personal questions. The plaintiff specifically mentioned that Corporal Stratton bought her a watch as a gift and said that he "gave her the creeps." Captain Capps responded that if she made a complaint the plaintiff would get in trouble because she did not follow the "chain of command" when she complained. Sergeant

-6-

McReynolds (male) was Corporal Stratton's direct supervisor. Captain Capps did say that she would keep an eye on Corporal Stratton.

23.     During February 2015, after the plaintiff had clearly rebuffed Corporal Stratton and complained to Captain Capps, Corporal Stratton tried to write up the plaintiff for making some accounting entries incorrectly. Corporal Stratton had never trained the plaintiff on how to make these entries or to use the accounting system correctly. The plaintiff complained to Captain Capps, who told Corporal Stratton that he could not discipline her since he had never trained her how to do this job duty.

24.     During March 2015, Corporal Stratton sent the plaintiff a text message with a photo of an open bottle full of beer, apparently located somewhere inside his house. Corporal Stratton said that he was going to the Mellow Mushroom if she knew of anyone who wanted to go. The plaintiff said that she did not want to go and was afraid that if her husband saw the message he would get the wrong idea and be upset. The plaintiff mentioned that he should delete his text to her since Corporal Stratton's wife could see it and get the wrong idea. Corporal Stratton responded that he didn't care. The plaintiff responded that he should not text her personal phone at all and should use her Southern Lync phone for work issues.

25.     During March 2015, after Corporal Stratton sent her the text message and photo, the plaintiff told her husband about the text message and the watch Corporal Stratton had given her in December 2014. On March 18, 2015, the plaintiff's husband called ALEA Sergeant McReynolds (male) to complain. Sergeant McReynolds was Corporal Stratton's direct supervisor. The plaintiff's husband said he wanted something done because she was married and didn't want him buying her gifts or sending her text messages.

26.   Sergeant McReynolds came to the plaintiff and instructed her to write out a statement about Corporal Stratton. The plaintiff emailed a statement to Sergeant McReynolds. Soon after, Corporal Stratton was called into Sergeant McReynolds' office.

27.   The next day, Corporal Stratton came to the plaintiff and complained that he had been stuck in a meeting with Sergeant McReynolds until 7:30 p.m. Apparently, Corporal Stratton's wife could not – or would not – pick up their daughter from day care in the afternoon. Corporal Stratton complained that his daughter was stuck at day care until almost 8:00 p.m. Corporal Stratton did not explain why he could not leave the meeting or have his wife pick up their daughter, but his comments implied the situation was the plaintiff's fault.

28.   On April 2, 2015, Sergeant McReynolds brought a printed statement to the plaintiff and asked her to sign it. The plaintiff reviewed the statement and realized it was like the statement she sent, but had been altered. As a result, the plaintiff declined to sign the statement until she could read it again. The plaintiff was also upset because she heard that Corporal Stratton had been spreading the false rumor that she had been "sleeping with" Captain Rush (male). At that moment, Corporal Stratton was in Captain Rush's office. The plaintiff later learned that Captain Rush heard about the rumor, confronted Corporal Stratton, and made him apologize to Captain Rush's wife and, later, to the plaintiff.

29.   After the incident with Captain Rush, Corporal Stratton apologized and did not engage in the same sort of harassment. Instead, Corporal Stratton became incredibly difficult and criticized the plaintiff's work performance on an almost daily basis. The complaints about her work were things that he would have ignored earlier and were criticism unlike any she had ever experienced while working for any other supervisor at DPS or ALEA. Corporal Stratton

issued her two written notes that were critical of her work and were placed in her personnel file at work.

30. Sergeant McReynolds retired in October 2015. ALEA employees were told that the agency was a big family and were strongly encouraged to attend retirements and funerals of former employees. All of the ALEA employees planned to go to the retirement ceremony and reception and none of the expected to use leave to attend since it was considered a work event. However, Corporal Stratton told the plaintiff she would need to use leave if she wanted to go.

31. At his retirement, Sergeant McReynolds and the plaintiff hugged to say goodbye and wish him well. Sergeant McReynolds told the plaintiff he was sorry ALEA left her in the situation that they did [meaning being supervised by Corporal Stratton]. Sergeant McReynolds said he thought the situation was a "hostile work environment."

32. During November 2015, the plaintiff had to have surgery on her rotator cuff in her shoulder. The plaintiff applied for FMLA leave, was approved and had the surgery. The plaintiff was released by her doctor and returned to work. Soon after she returned, Corporal Stratton claimed that he saw her staggering down the hallway and demanded she take a drug test. The plaintiff argued that she was was not staggering and was not on any sort of drugs. Corporal Stratton insisted that she be tested and had Captain Capps (female) accompany him since she was female. Corporal Stratton announced to everyone present in the office that he was taking the plaintiff to have her tested for drugs. The plaintiff was given a drug test which came back negative.

33.    Soon after, ALEA Personnel Manager Stan Goolsby (male) had the plaintiff transferred away from Corporal Stratton in the Drug Recognition Enforcement Unit. The plaintiff was assigned to Corporal Joe Penton (male), who had not supervised anyone before she was assigned to him. The plaintiff was also the only employee assigned to work for Corporal Penton at the time. Upon information and belief, the plaintiff was not replaced after she was terminated.

34.    Corporal Penton continued the pattern of daily criticism which was unreasonable and non-constructive criticism of her work. The plaintiff had always done a good job, and continued to do a good job, and had never been treated this way by her supervisors in the past. The plaintiff continued to feel that she was being harassed in an effort to force her to resign. As a result, the plaintiff attempted to transfer as soon as possible and sought employment at another state agency.

35.    On Friday, May 13, 2016, the plaintiff was scheduled to interview with an office of the Department of Public Health in Valley, Alabama. Just before she arrived for her interview, she became very ill which resulted in a situation which was quite embarrassing. She called the interviewer to reschedule from her car outside. The interviewer told the plaintiff it was fine and that another had been postponed. The interviewer to the plaintiff just to come back on Monday. She also called Corporal Penton, but could not reach him. The plaintiff was able to reach Captain Capps who told her not to bother coming back to work since the drive would cause her to arrive at the end of the day.

36.    On Monday, the plaintiff went for her interview with Public Health.

37.    On July 20, 2016, the plaintiff filed a charge of discrimination under Title VII with the Equal

Employment Opportunity Commission ("EEOC") (Charge Number 420-2016-02597) alleging, *inter alia*, an illegal hostile work environment and/or harassment resulting in her termination based upon sex and retaliation for resisting and opposing this discrimination as well as complaints about the same. Attachment 1.

38.   On or about February 4, 2017, the plaintiff received Notice of Right to Sue from the EEOC for her Title VII claims brought in Charge Number 420-2016-02597 which was dated February 4, 2017 and received several days thereafter.

## V.   DAMAGES

39.   The plaintiff is now suffering, and will continue to suffer irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

40.   The plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of the defendant's unlawful conduct.

41.   The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages, punitive damages and liquidated damages is her only means of securing adequate relief. The plaintiff is not seeking punitive damages from defendant ALEA since it is a state agency.

## COUNT I: DISCRIMINATION (HARASSMENT) ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

42.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

43.    The defendant ALEA also intentionally discriminated against the plaintiff on the basis of her sex with regard to job assignments, discipline, and other terms and conditions of employment.

44.    The actions of the defendant ALEA, through its employee Corporal Stratton, created a hostile work environment for the plaintiff which was based on sex and was continuous in nature during her employment.  The hostile work environment was a continuing violation of Title VII.

45.    The defendant ALEA engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

46.    As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

47.    This claim is brought against the defendant ALEA as the plaintiff's employer under Title VII and not against individual defendant Corporal Gary Scott Stratton.

### COUNT II: DISCRIMINATION (TERMINATION) ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

48.    The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

49.    The defendant ALEA intentionally discriminated against the plaintiff on the basis of her sex with regard to job assignments, discipline, and other terms and conditions of employment, by reducing her responsibilities and limiting her opportunities for advancement, including initiated a process which resulted in her termination in violation of Title VII.

50.   The defendant ALEA engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

51.   As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

52.   The defendant ALEA engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

53.   As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

54.   This claim is brought against the defendant ALEA as the plaintiff's employer under Title VII and not against individual defendant Corporal Gary Scott Stratton.

## COUNT III: RETALIATION (HARASSMENT) IN VIOLATION OF TITLE VII

55.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

56.   The plaintiff engaged in protected opposition to illegal discrimination when she refused to consent to the hostile work environment created by Corporal Stratton.

57.   The plaintiff engaged in protected activity to illegal discrimination when she complained about sex discrimination, including sexual harassment.

58.   The defendant ALEA discriminated against the plaintiff on the basis of retaliation with respect to job assignments, discipline, other terms, conditions, and privileges of employment in violation of Title VII.

59.   The actions of the defendant ALEA created a hostile work environment for the plaintiff which was based on retaliation and was continuous in nature during her employment.  The

hostile work environment was a continuing violation pursuant to Title VII.

60.     The defendant ALEA discriminated against the plaintiff by creating and tolerating a retaliatory hostile work environment, which included ultimately terminating the plaintiff's employment in violation of Title VII.

61.     The defendant ALEA engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

62.     As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

63.     This claim is brought against the defendant ALEA as the plaintiff's employer under Title VII and not against individual defendant Corporal Gary Scott Stratton.

<u>**COUNT IV: RETALIATION (TERMINATION)<br>IN VIOLATION OF TITLE VII**</u>

64.     The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

65.     The plaintiff engaged in protected opposition to illegal discrimination when she refused to consent to the hostile work environment created by Corporal Stratton.

66.     The plaintiff engaged in protected activity to illegal discrimination when she complained about sex discrimination, including sexual harassment.

67.     The defendant ALEA discriminated against the plaintiff on the basis of retaliation with respect to job assignments, discipline, other terms, conditions, and privileges of employment in violation of Title VII.

68.     The defendant ALEA discriminated against the plaintiff by creating a retaliatory hostile work environment and ultimately terminating the plaintiff's employment in violation of Title VII.

69.   The defendant ALEA engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

70.   As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

71.   This claim is brought against the defendant ALEA as the plaintiff's employer under Title VII and not against individual defendant Corporal Gary Scott Stratton.

### COUNT V: INVASION OF PRIVACY

72.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

73.   Through supplemental jurisdiction, this Court's jurisdiction extends over the related Alabama state law claim of invasion of privacy because all such claim arises from a "common nucleus of operative fact."

74.   The defendant Corporal Gary Scott Stratton invaded the privacy of plaintiff by, among other things, intruding into the plaintiff's private seclusion by making statements or inquiries invasive of her privacy.

75.   The defendant Corporal Gary Scott Stratton engaged in the practices complained of herein with malice and/or with reckless indifference to the plaintiff's rights.

76.   This behavior proximately caused the plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from defendant Corporal Gary Scott Stratton.

77.   This claim is brought against defendant Corporal Gary Scott Stratton, but not against defendant ALEA.

## COUNT VI: OUTRAGE

78.     The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by
        reference herein.

79.     Through supplemental jurisdiction, this Court's jurisdiction extends over the related
        Alabama state law claims of outrage because all such claim arises from a "common nucleus
        of operative fact."

80.     The defendant Corporal Gary Scott Stratton committed conduct which was extreme,
        outrageous, and beyond the bounds of decency in civilized society.

81.     The defendant Corporal Gary Scott Stratton engaged in the practices complained of herein
        with malice and/or with reckless indifference to the plaintiff's rights.

82.     This behavior proximately caused the plaintiff to suffer great emotional distress for which
        she claims compensatory and punitive damages from defendant Corporal Gary Scott Stratton.

83.     This claim is brought against defendant Corporal Gary Scott Stratton, but not against
        defendant ALEA.

## V.     PRAYER FOR RELIEF

        WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this
action and after trial:

        1.      Grant the plaintiff a declaratory judgment holding that the actions of the defendants
described hereinabove violated and continue to violate the rights of the plaintiff as secured by Title
VII of the Civil Rights Act of 1964.

        2.      Grant the plaintiff a permanent injunction enjoining the defendants, their agents,
successors, employees, attorneys and those acting in concert with the defendants and on the

-16-

defendants' behalf from continuing to violate Title VII of the Civil Rights Act of 1964.

3.      Issue an injunction ordering the defendants not to engage in discrimination and acts which violate Title VII of the Civil Rights Act of 1964.

4.      Grant the plaintiff an order requiring the defendants to make the plaintiff whole by reinstating her in the position she would have occupied in the absence of the discrimination as set out herein, backpay (plus interest), compensatory, and punitive damages.

5.      The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

H. Wallace Blizzard (asb-8969-b59h)
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
Counsel for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

OF COUNSEL

The plaintiff requests this Honorable Court to serve via certified mail upon the defendant the following: Summons, Complaint.

**Defendants' Addresses:**
Alabama Law Enforcement Agency
201 South Union Street, Ste. 300
Montgomery, Alabama 36130

Corporal Gary Scott Stratton
926 Fireside Drive
Prattville, Alabama 36067

_____
OF COUNSEL